# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| WANDA A. MARTZOLF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| vs. | ) | No. 08-0016-CV-W-JCE-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income ["SSI"] under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

## Discussion

Plaintiff, who was 41 years old at the hearing before the ALJ, has a high school education. Her past relevant work includes grocery store clerk, production worker, and parts associate. She alleges disability because of fibromyalgia, arthritis, pulmonary stenosis, heart murmurs, osteoporosis, tendonitis, depression, carpal tunnel in both wrists, and emphysema.

At the hearing before the ALJ, plaintiff testified that she last worked in April of 2003 when she got real sick. At the time, she had an outdoor job which required walking, lifting, unloading pallets, and doing inventory. She was doing that job instead of a desk job because one of her doctors told her that sitting behind a desk was the worst thing for her because of problems with her neck, back, and carpel tunnel. Her doctor thought that if she tried a job where she moved around and was more active, it would help, but it did not. Plaintiff had also been a part-

2

time bookkeeper for a couple of years before that, where she worked about 20-25 hours a week. Previously, she had worked in an office for five years, where she also had to do some heavy lifting. She left her last job because she started having a lot of physical problems. She had carpal tunnel releases on both wrists, which did not completely help. She was hospitalized for pain and fatigue; that is when the doctors found more heart problems and emphysema. Plaintiff had been diagnosed with pulmonary stenosis in 1981. In 2003, she had a valve replaced in her heart. This was the second heart surgery she'd had. The first was when she was two years old. After she was discharged from the hospital, she continued to have problems, which she still has. She has a hard time breathing, chest pain daily, and feels pressure on her chest. Plaintiff had breathing problems during the hearing, which interrupted the proceedings. She testified that she does not take anything for the shortness of breath because the doctors said that there's nothing that will help. She just tries to calm down and slow down. Although she was nervous at the hearing and thought that some of her problem was probably caused by that, she might have the same thing happen at home if she has to talk on the phone for a long period of time, or simply talk for a long time. She gets nervous because of her breathing problems. At home, she sits quietly and slows down to try to combat the symptoms. It takes from a few minutes to a half an hour to start feeling better. It usually just happens once a day, at home or away from home. She feels like she is sick all the time, with lingering sinus infections and the flu. Plaintiff testified that she still has trouble using her hands because of carpal tunnel, which includes burning and stinging in both hands. When she tries to dust, she has to stop because of severe pain. It also affects her writing, driving, and basically anything that takes a little bit of time using her hands. She can work perhaps four or five minutes, like peeling potatoes, before the pain and sensation

3

in her hands causes her to quit. If she keeps going, she will have pain in her shoulders and down her back. She takes pain medication, runs hot water on her hands, and sometimes rubs them to help the pain. Sometimes she won't go back to the task she was doing, and maybe will lie down for up to an hour. Plaintiff testified that she usually will lie down everyday for about an hour. She has told the doctor about the problem with the pain in her shoulders and back, which he says is because of arthritis, tendonitis, and osteoporosis. The doctor has not suggested surgery, and has told her that she is "just going to have to learn to live with it." [Tr. 322]. Plaintiff was also diagnosed with fibromyalgia years ago, and it has gotten worse, particularly in the last five or six years. She has pain all through her body, her arms go to sleep when she sits up, and she has severe pain in her back and legs on a daily basis. She has taken Methadone for three or four years for pain. She took two the morning of the hearing, although she stated that her "back is just killing [her] right now, my legs." [Tr. 322]. In an average day, she will take four Methadone. It helps some, and if she didn't take it, she would be crying from the pain. As far as side effects, she stated that she gets hot a lot, but she is not sure which medicine causes that. Her average pain on a one-ten scale is probably a six or seven. If she sits too long, walks too long, does physical activity, or lifts anything, then it gets worse. The pain is very bad in the morning. It has gotten up to ten on the pain scale. The pain affects her mood, causing her to cry and not be able to do anything. She is upset and can't take care of her family. She has a couple of decent days a week. Riding in the car and sitting at the hearing will cause her to have three or four bad days. On a decent day, she can do a few things and not be in so much pain; she might sit and talk to her daughter, watch TV without fidgeting, or cook or clean a little. If she has a good day, the next day will be a bad one; if she pushes herself, the good day will turn into a bad day.

4

Pushing herself might involve cooking a whole meal. On a bad day, she does nothing; she just sits in her chair, lies down, and sometimes does not get dressed. It is physically and mentally difficult for her. She also has a lot of problems with depression, which she thinks is a significant problem. She had some problems before, but it has gotten worse as the physical problems have worsened. She takes Lexapro for the depression, but does not see a therapist. Her depressive symptoms include crying, wanting to cry, never wanting to leave the house, and sleep problems with only about three or four hours of uninterrupted sleep on average. She thinks she can walk less than a block without getting short of breath and because of the pain in her lower back and hips; stand maybe 20 minutes; and sit perhaps 15-20 minutes before she has pain in her shoulder, neck, and lower back, as well as stinging in her hands. After sitting at the hearing, she had these symptoms, including the feeling of needles poking in her hands, and a nagging ache in her shoulders. She was allowed to stand up because of this. She can probably lift about eight pounds. Her daughter, who was 18 at the time of the hearing, does the grocery shopping, cooking, most of the cleaning, and most of the driving. She has been doing this since she was in high school. Plaintiff used to enjoy playing volleyball, crocheting, swimming, and barbeques, but she cannot take the heat anymore. Being outside in the heat makes her physically ill. She also has problems with fatigue where she never feels like doing anything because she feels awful all the time. She has memory problems and stated that she cannot remember anything.

Plaintiff testified that after she had the open heart surgery for the valve replacement in 2003, she did not go back to work. Her employer had initially held the job open for her, but then he could no longer hold it. In any event, she did not think she could have returned to the job. When she had carpel tunnel surgery, which she thought was in 2001, it was in both hands. She

5

still has problems with her grip and with dropping things, although she can pick up small things like a toothbrush or comb. Plaintiff has a heart murmur, although she is not aware if this affects her or not. She did not know how many trigger points she has in terms of the fibromyalgia. She has pulmonary stenosis, which affects her ability to breathe. She has nodules on her lungs, which the doctor is watching. And, she has emphysema, which was diagnosed when she had heart surgery. Plaintiff acknowledged that she still smokes about two or three cigarettes a day. She stated that she had quit for a while. She also gets about five to six severe sinus infections a year. Plaintiff stated that she has never been hospitalized for emotional problems, attempted suicide, had hallucinations, heard voices, received psychological counseling, or seen a psychiatrist on an ongoing basis.

The ALJ found that plaintiff has not engaged in substantial gainful activity since May 10, 2003, the alleged onset date. He further found that the medical evidence established that plaintiff suffers from chronic obstructive pulmonary disease ["COPD"], pulmonary stenosis, and a disorder of the back. It was the ALJ's finding that plaintiff was not entirely credible based on her statements regarding the intensity, persistence and limiting effects of her symptoms. It was his opinion that plaintiff was unable to perform her past relevant work, but that she could perform less than a full range of sedentary work, to include surveillance systems monitor, office support worker, and a call-out operator. Therefore, the ALJ found that plaintiff is not under a disability.

In terms of her Residual Functional Capacity ["RFC"], the ALJ found that plaintiff has the RFC to "perform simple, routine, repetitive work involving a wide range of sedentary exertion in that she is able to lift and/or carry 10 pounds, stand and/or walk for 2 hours of an 8

6

hour workday and sit for 6 hours of an 8 hour workday, provided she is able to alternate sitting and standing every 30 minutes." [Tr. 17]. He also found that such work should be low stress, and involve minimal interaction with the general public, co-workers and supervisors. Additionally, there should be no temperature extremes or high humidity, no operation of foot controls, frequent stooping or bending, and that the job should not require fine manipulation, work above shoulder level, repetitive use of either hand, to include repetitive reaching, crawling, kneeling, crouching, squatting, pushing/pulling, or climbing of ladders of scaffolds.

After the hearing, the ALJ sent plaintiff to a consultative examiner, Dr. Hasan, for a pulmonary test, and for ejection fraction test. Dr. Hasan noted that plaintiff was short of breath during the examination, and that "[v]irtually all the muscles and joints were tender and did have marked tenderness noted in the muscles of upper and lower parts of the body consistent with fibromyalgia tender points." [Tr. 263]. He also noted several areas with mild to moderate restrictions in range of motion, including both shoulders.

Plaintiff contends that the ALJ's decision should be reversed because he erred in finding that her depression and left shoulder pain are not severe; that he erred in his credibility analysis; and that he erred in finding that she could perform other work.

A review of the medical records indicates that plaintiff was born with a congenital heart defect, for which she underwent heart surgery at age two. She began experiencing chest pain and fatigue in 2003, and was hospitalized in June for left pulmonary artery stenosis with symptoms of chest pain, shortness of breath, and neck pain radiating down her back. The medical records indicate that she complained of chronic pain, fatigue, and depression. It was also noted in the records that she was upset about missing a lot of work. She was prescribed

7

Methadone for pain management, and was discharged with diagnoses of left pulmonary artery stenosis, pulmonary hypertension, left lower lobe mass, tobacco use, congenital heart disease, major depression, fibromyalgia, and back pain. Shortly thereafter, she was again hospitalized for a drug overdose, which was determined to probably be the result of taking too much of her medication. After having multiple consultations, including cardiology, pulmonary, pain management, and psychiatry, she eventually underwent open heart surgery for repair of her congenital heart disease due to severe pulmonary stenosis. Post-surgery, in October of 2003, she had a follow up appointment for the pulmonary artery reconstruction, and was found to be doing well. Although she denied shortness of breath or palpitations at that time, she was noted to have fibromyalgia, and to be taking Methadone for chronic chest pain, as well as Lexapro and Ultram. Plaintiff was seen in the emergency room in February of 2004, complaining of left shoulder pain and chest pain, pressure, and pain down her arms. She was diagnosed with chest pain, with the cause unclear. She continued to go to the doctor with complaints of shoulder and arm pain, which was assessed as musculoskeletal shoulder pain. She was prescribed Celebrex; she also had a bone scan, which revealed femoral and lumbar spine osteopenia. Through 2004, she had several doctor appointments in which she complained of chronic left upper extremity pain, for which she took Methadone; she was assessed with congenital heart disease, post surgery, and chronic pain syndrome, which was suspected to be fibromyalgia. A consultative examiner, Dr. McKinney, saw her in 2005; she noted tenderness in 8 out of 18 tender points, and that plaintiff complained of arm and wrist pain when lifting ten pounds. Dr. McKinney suggested that she lift no more than 5 pounds using each hand, but otherwise did not impose functional limitations. In March of 2005, she was diagnosed with pneumonia, and was prescribed Albuterol. In 2006, she

continued to complain of depression and fibromyalgia, and to have her prescriptions refilled for chronic pain and depression.

In addition to seeing Dr. Hasan in 2007, she also had a pulmonary function study in April. During the study, she exhibited increased coughing, and complained of shortness of breath. She was given Albuterol, and minimal objective lung defect was assessed.

Turning to plaintiff's argument that the ALJ erred in his credibility determination, the standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

In this case, plaintiff objects to the ALJ's credibility determination, wherein he stated that plaintiff's statements concerning intensity, persistence and limiting effects of her impairments were not entirely credible. She asserts that the ALJ erred in stating that most of her conditions have resolved because she continues to exhibit chest pain and shortness of breath, which the ALJ witnessed at the hearing. Additionally, she contends that there is nothing to indicate that her

9

fibromyalgia pain, shoulder pain, back pain, limitations caused by carpel tunnel syndrome, or her depression have improved. She stresses that she has been maintained on Methadone for pain management, and that the consultative examiner, Dr. Hasan, who saw her after the hearing, noted in his Medical Source Statement that she had weakness and decreased range of motion in both shoulders, plus marked tenderness of different muscle groups in her lower extremities. Therefore, it is asserted that most of her impairments have not resolved. Additionally, regarding plaintiff's smoking habit of more than a pack a day for 20 years, she contends that the ALJ failed to note that she has attempted to quit smoking and has done so on occasion. Additionally, plaintiff asserts that the ALJ failed to discuss her daily activities, and that her need to lie down and her bad days where she can't do anything support her allegations of disabling pain and depression.

The ALJ concluded that most of plaintiff's problems associated with heart and lung problems were resolved after surgery, based in part on a statement in October of 2003 by her doctor that "everything looked fine from a cardiology standpoint." [Tr. 19]. Plaintiff was believed to be doing well except for chronic pain management with Methadone for chronic chest pain. He noted the medical records that recommended that she stop smoking and that additional surgery was related at least in part to tobacco use.

After careful review of the record as a whole, the Court finds that the ALJ erred in discrediting plaintiff's testimony, and did not adequately discuss the factors set forth in <u>Polaski</u>. He did not point to inconsistencies in the record that would cause plaintiff's testimony regarding her level of pain to not be credible, nor do such inconsistencies appear to exist; he concluded that most of plaintiff's physical problems were resolved, when, in fact, even the post-hearing

10

consultative examiner diagnosed her with polyarthritis, fibromyalgia, COPD, lung density, congenital heart disease post surgery, depression, history of carpal tunnel syndrome, and chronic cervical and lumbar disc disease with radiculopathy. He also noted her shortness of breath upon examination, and the marked tenderness consistent with fibromyalgia. He also noted several areas with mild to moderate restrictions in range of motion, including both shoulders. In addition to disbelieving plaintiff's allegations of pain despite medical evidence to support those complaints, the ALJ did not acknowledge the fact that plaintiff takes Methadone for pain management, nor that the need for pain medication was well-documented in the record. Further, the ALJ did not appear to factor in plaintiff's work history for the past fifteen years. He did not delineate examples of medical records from treating physicians that were inconsistent with plaintiff's level of complaints. Additionally, as plaintiff submits, he did not consider her daily activities, including her description of how exertion causes her pain, fatigue, and shortness of breath. Not only was the latter observed at the hearing, it was also noted by the consultative examiner.

In this case, there is well-documented medical evidence in the record to support plaintiff's allegations of disabling physical impairments because of chronic pain, heart and lung problems, and back, hand, and shoulder pain. These severe impairments are substantiated in the record. Based on a review of the record as a whole, the Court finds that the ALJ erred in his credibility analysis. The Court finds that the ALJ did not rely on substantial, relevant and supporting evidence in explaining his reasons for discrediting plaintiff's complaints. Lowe, 226 F.3d at 971-72.

11

Additionally, there is not substantial evidence in the record to support the ALJ's conclusion that plaintiff's shoulder pain was not a severe impairment. There is more than ample medical evidence in the record to support her complaints of shoulder pain, which were well-documented on numerous occasions. In addition to continuing to be prescribed Methadone for pain management, she was also prescribed Celebrex; Dr. Hazan noted that she had weakness and a decreased range of motion in both shoulders, and marked tenderness in her upper and lower extremities. Plaintiff testified at the hearing about her shoulder pain, and was allowed to stand up because a nagging ache in her shoulders at the hearing. The Court finds, therefore, that the ALJ erred in concluding at step two of the evaluation process that her shoulder pain was not a severe impairment, and that plaintiff has met her burden of establishing that it is severe in that it amounts to more than "only a slight abnormality." See Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 3/23/09